IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TAMMY ANN SMITH, } | |
| } | |
| Plaintiff } | |
| } | |
| v. } | Case. No.: 5:08-CV-00900-JHH |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, Tammy Ann Smith, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be remanded for the consideration of evidence related to the judicial pain standard.

**I.     Proceedings Below**

Plaintiff filed her application for disability insurance benefits and supplemental security income on July 20, 2005.[1]  (Tr. 56).  Plaintiff's application was denied initially.  (Tr. 48).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), which was held on April 3, 2007.  (Tr. 499).   In the May 21, 2007 decision, the ALJ determined that Plaintiff was not eligible for disability benefits because she could perform past relevant work and was not disabled.  (Tr. 36-44).

---

[1] Plaintiff's application for supplemental security income is not included in the record.

Plaintiff requested review of the ALJ decision by the Appeals Council and submitted additional evidence that was made part of the record. (Tr. 7, 15-19, 495-498). After the Appeals Council denied Plaintiff's request for review on November 2, 2006 (Tr. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing in question, Plaintiff was thirty-seven years old, had a high school equivalent education, and had attended additional courses in child development at a technical school. (Tr. 502). She has prior work experience as a dry cleaning presser, waitress, cashier, truck driver, fast food worker, and manager of a retail store. (Tr. 119, 529-30). Plaintiff alleges that she has not been able to engage in substantial gainful activity since September 29, 2004, when she became unable to work due to the following conditions: back surgery, endometriosis, pain due to ovarian cyst, and bleeding stomach ulcers. (Tr. 81-82).

Plaintiff testified at the April 3, 2007 hearing that she suffers from constant pain. (Tr. 512). Plaintiff had a car accident at the age of sixteen which dislocated her pelvic bone, leading to herniated and bulging disks. (Tr. 505-06). Since that time, she has also experienced bleeding ulcers which cause a constant burning sensation in her stomach, nausea, and vomiting, as well as headaches and bladder problems which may be attributed to nerve problems in her back. (Tr. 509-11). Plaintiff testified that her back problems cause constant pain in her back, down her left leg, and into her foot. (Tr. 512). The left leg goes numb, tingles, and burns all the way down to her foot. (Tr. 512-13). At times she stands up and her leg completely fails by "going out" on her. (Tr. 512-13). Plaintiff has a difficult time sleeping through the night because of the pain and often sleeps in a recliner to take weight off her back. (Tr. 514). She testified that she has a difficult time doing anything for

2

herself. (Tr. 515). She needs help getting dressed in the morning and cries because of the pain she experiences taking a shower. (Tr. 515-16). She does not do the housework or food preparation and relies on her father to help with her child during the day. (Tr. 517-18). She does not drive and relies on her niece and nephew to help with the grocery shopping. (Tr. 519).

Plaintiff is not married and lives with her boyfriend and two sons. (Tr. 515-17). She estimates that she can stand for ten to fifteen minutes by putting all of her weight on her right leg. (Tr. 521). She says she is able to walk 30 to 40 steps before having to stop and hold on to the wall for support. (Tr. 522). If she is in a comfortable chair that reclines, she can sit for fifteen to twenty minutes. (Tr. 522). She does not lift anything heavier than a gallon of milk, and even that sometimes pains her. (Tr. 523). She can not bend over to take clothes out of the dryer, and does not kneel or crouch for fear of being able to get back up. (Tr. 523-24). She avoids climbing up steps and only goes up and down the four steps leading from her trailer for doctor's appointments or other essential trips, thus rendering her essentially homebound. (Tr. 524-25).

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether

the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 38). Although the ALJ determined that Plaintiff has severe impairments of a history of spinal fusion with residual back pain, obesity, and ulcers (Tr. 38), he found that her impairments, considered either alone or in combination, failed to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 39). The ALJ determined that Plaintiff retains the residual functional capacity to perform light work with additional limitations such as a need to avoid concentrated exposure to cold and heat and to avoid all exposure to unprotected heights and hazardous machinery. (Tr. 39-43). According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not

fully credible because of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 42-43).

The ALJ called Karen Vessell, a vocational expert who was present throughout the hearing and familiar with Plaintiff's background, to testify. (Tr. 529-30). The ALJ asked Ms. Vessell a series of hypothetical questions that assumed a person who could perform light work with Plaintiff's limitations. (Tr. 356-57). Ms. Vessell testified that such an individual could perform all of Plaintiff's past relevant work with the exceptions of truck driver and fast food worker. (Tr. 531-32). In response to a second hypothetical that included a limitation to sedentary work, Ms. Vessell testified that such an individual could perform other jobs existing in significant numbers in the national economy, including order clerk, addresser, and compact assembler. (Tr. 532-33). Based on Ms. Vessell's testimony, the ALJ found that a significant number of jobs that Plaintiff is capable of performing exist in the national economy and, therefore, Plaintiff was not under a disability at any time through the date of the decision. (Tr. 44).

**III.   Plaintiff's Argument for Remand**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, remanded for further consideration. (Doc. # 6, at 7). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ failed to properly apply the three-part pain standard; and (2) new evidence submitted to the Appeals Council requires remand for consideration of that evidence and further development.

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

Against the backdrop of applicable standards, the court accepts Plaintiff's argument for remand. For the reasons outlined below, the court finds that the ALJ improperly discredited Plaintiff's subjective complaints of pain and failed to consider objective medical evidence which substantiated Plaintiff's complaints of pain.

**A.     The Three-Part Pain Standard**

Plaintiff alleges that in determining her ability to work, the ALJ did not appropriately evaluate her subjective symptoms of pain. (Doc. # 6, at 7-21). The Act and its related regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.[2]  *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

---

[2] The law in this Circuit does not require objective proof of the pain itself. Thus, a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See Haugen v. Astrue*, 497 F. Supp.2d 1315, 1318 (N.D. Ala. 2007), *citing* 20 C.F.R. §§ 404.1529 and 416.929.

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses.  Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain.  *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839.  Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

    **B.**    **Application of the Pain Standard to the Evidence**

        **1.**    **The Judicially Created Pain Standard**

In this case, the ALJ properly cited 20 C.F.R. § 404.1529 and the Eleventh Circuit caselaw outlining the above method for assessing subjective complaints of pain. (Tr. 39-40).  But his application of the medical evidence and testimony to those standards lacks substantial support in the record.

First, the ALJ considered Plaintiff's lumbar fusion in 2004 and post-surgery progress as demonstrated by the objective medical evidence and surgeon's notes (Tr. 41), and found that the post-surgical medical evidence was inconsistent with Plaintiff's allegation of a severe, debilitating

back pain by carefully selecting which notes to consider.³ (Tr. 41). Such reasoning was not sound. Plaintiff presented to the Huntsville Hospital emergency room no less than ten times *after* the surgery, with complaints of persistent radiating back and leg pain.⁴ (Tr. 249, 278, 335, 347, 351,

---

³ The ALJ noted the following medical entries relevant to Plaintiff's complaints of back pain:

- In November 2004 she was noted to have 5+/5 motor strength and normal sensation to light touch and pinprick throughout all sensory dermatomes and good range of motion of the hips, knees, and ankles with no pain, crepitus or deformity. (Tr. 41, 231).
- In April 2005, six months postoperatively, Plaintiff was noted to be doing very well and pleased with the results of her surgery. (Tr. 41, 231). At that time, she was to return to the doctor as needed. (Tr. 231). The medical record does not show that Plaintiff ever returned. (Tr. 231).
- An emergency room visit in January 2006 for moderate back pain revealed an unremarkable x-ray and normal examination. (Tr. 41, 334-431).
- An emergency room visit in April 2006 for throbbing and burning joint and leg pain revealed reflexes to be 2+, no sensory deficit, muscle strength 5/5 of both upper and lower extremities, and unremarkable MRIs. (Tr. 41, 334-462).
- In October 2006 Plaintiff only wanted medication and not steroid injections. (Tr. 41, 476.) Notes from the same day revealed: "Does not want further surgery, does not want to LESI, only wants more medication. No neurologic defect. Will refer to pain clinic but will not provide narcotics without some attempt at other treatment modalities." (Tr. 41, 478).
- In June 2006 Plaintiff was referred to Dr. Scholl for significant back pain, yet examination revealed: a normal gait with heel/toe/tandem walking in tact; no tenderness to palpitation along the length of the thoracolumbar spine, posterior iliac spine, sacroiliac joint, sciatic notice, or greater trochanters; good position of the implants. (Tr. 41, 329-334).

⁴ Additional medical entries objectively consistent with Plaintiff's subjective complaints of back and neck pain include:

- In January 2006, Plaintiff exhibited decreased range of motion and muscle spasm. (Tr. 403).
- In June 2006, Plaintiff exhibited decreased range of motion, muscle spasm, CVA tenderness, and vertebral point tenderness. (Tr. 248).
- In August 2006, Plaintiff was noted as having limited range of motion due to pain and CVA tenderness. (Tr. 356, 358).
- In November 2006, Plaintiff again exhibited decreased range of motion and muscle spasm. (Tr. 342).

363, 364, 395, 411, 430). And evidence submitted to the ALJ on May 22, 2007, after the hearing,[5] also revealed objective medical findings to support Plaintiff's complaints of pain. (Tr. 495). On March 6, 2007 Dr. Parker noted that Plaintiff's "L3-4 level shows some slight bulging of the disc" and was "suspicious of a L3-4 disc herniation" and ordered an MRI due to pain that was noted by the doctor to be "quite unbearable." (Tr. 497). The MRI revealed moderate degenerative facet disease bilaterally and a mild diffuse disc bulge at L3-4. (Tr. 498). That new objective evidence is

---

Consistent with Plaintiff's complaints of endometriosis, incisional hernia, and gastric ulcers is the following evidence:

- In July 2005, Plaintiff was noted to have "multiple ulcerations just above the EG junction. The antrum as well as the duodenal bulb demonstrated an area of chronic inflammation with superimposed acute inflammation. The scope was retroverted upon itself visualizing the cardiac portion which demonstrated a hiatial hernia." (Tr. 236, 242).
- In November 2005, Plaintiff presented to the emergency room with heavy pelvic pain, cramping, and bleeding. (Tr. 423).
- In February 2006, Plaintiff was diagnosed with a ventral hernia, postcholecystomy changes, and a small area of scarring within the right kidney. (Tr. 378).

[5] Plaintiff's second argument for remand is grounded in the new evidence, submitted to the Appeals Council, but which the Appeals Council refused to review. (Doc. # 6 at 21-27). Specifically, Plaintiff criticizes that "the visits for 4/21/04; 5/19/04; 7/28/04; and 9/8/04 to Huntsville Hospital were not listed on the medical records summary, or mentioned in the ALJ's decision, so out of caution, Smith enclosed those records, along with Dr. Parker's office note of 3/6/07 and the report from the 3/8/07 MRI. **All of this additional evidence relates to a period before the ALJ's decision**." (Doc. # 6, at 22) (emphasis in original).

If a claimant submits new noncumulative and material evidence to the Appeals Council after the ALJ's decision, the Appeals Council shall consider such evidence, but only where it relates to the period on or before the date of the ALJ's hearing decision. *Smith v. Commissioner*, 272 Fed. Appx. 789, 800 (11th Cir. April 3, 2008), *citing* 20 C.F.R. § 404.970(b). And the Eleventh Circuit has made clear that a district court must consider evidence not submitted to the ALJ but considered by the Appeals Council when that court reviews the Commissioner's final decision for substantial evidence. *Ingram v. Commissioner*, 496 F.3d 1253, 1266-67 (11th Cir. 2007).

10

material, and should have been considered on review of the claim.[6] *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (remanding because new evidence was material when new reports offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work).

Because there is objective evidence of pain that was not considered by the ALJ, along with a significant amount of medical evidence supporting Plaintiff's contentions of pain that does not appear to have been considered by the ALJ, this case is due to be remanded to the Commissioner for further proceedings consistent with this opinion.

### 2. Subjective Complaints of Pain

Even though the ALJ found that Plaintiff did not meet the pain standard, he nevertheless made a determination as to Plaintiff's credibility related to allegations of pain. But that determination also appears to be flawed and not supported by substantial evidence. Although the ALJ stated that Plaintiff engaged in "multiple conflicting statements and allegations," such a suggestion is simply unsupported by the evidence of record. (Tr. 43). The ALJ used the following examples:

- Dr. Samlowski noted that the claimant did not want further surgery, or epidural injections, "only wants medication." (Tr. 42).

---

[6] The ALJ also seems to have improperly considered the medical evidence on Plaintiff's complaints of recurring headaches. The ALJ stated that after August 2006, "there is no further documentation for any further complaints [of headaches]" and used that absence in support of his finding that there was not objective medical evidence of Plaintiff's pain. (Tr. 42). That statement is, however, simply incorrect. Plaintiff did complain about headaches in August 2006, (Tr. 441), and twice in December 2006 doctor's notes reveal that she maintained the "active" problem of "episodic tension-type headache." (Tr. 433, 436). The same "active" problem of "episodic tension-type headache" is noted in a March 1, 2007 doctor's note. (Tr. 493).

11

While it is true that Dr. Samlowski's notes state that Plaintiff did not want epidural injections, further evidence in the medical records indicate that Plaintiff underwent epidural injections in the past which did not help her pain. "Basically she has had ESI's in the past but feels like they made it worse so I would be cautious about recommending ESI's to her." (Tr. 235).

- •  The claimant testified that she did not drive and had been homebound for 3 months; however, she later testified that she had not driven in 3 weeks. (Tr. 43).

Plaintiff's testimony does not reflect the ALJ's statement that she had not driven in 3 weeks. The testimony only supports Plaintiff's statement that she had basically been homebound for 3 months. "But up until about three months ago, I could do pretty good, but now I'm getting to the point of where I can't even get myself up" (Tr. 515); "I have somebody that drives me" (Tr. 519); "I'm not supposed to drive when I take that medicine, but I, I don't drive" (Tr. 520); "I very seldom, like I said, in the last three months I've really been pretty much homebound. I've been at home for the last three months" (Tr. 525).

- •  The claimant testified that she does not drive and does not shop alone; however, emergency room records document that she presented "by herself" to the emergency room in October 2006. (Tr. 43).

That statement by the ALJ is inaccurate. The ER nursing assessment says, in the "accompanied by" spot – "self." (Tr. 341). It does not say that Plaintiff drove herself to the emergency room or that Plaintiff was "by herself" for the duration of the emergency room visit. All it is relevant for is the fact that Plaintiff was by herself when the nurse filled out the paperwork.

- •  In October 2006, she [Plaintiff] told Dr. Samlowski that Dr. Scholl told her that she had severe nerve damage and surgery would not help. However, Dr. Scholl's records only show that he diagnosed her with post radicular pain, with no mention of nerve damage. (Tr. 43).

That statement by the ALJ is inaccurate. Dr. Scholl's records clearly state: "We have discussed that unfortunately however there is not much that I can offer her from a surgical standpoint as there does not appear to be any persistent areas of compression." (Tr. 330). Dr. Scholl prescribed Lyrica, which is consistent with treatment for nerve pain. (Tr. 333).

- The medical record does not show that the claimant has returned to Dr. Parker since April 2005. (Tr. 41).

While it is true that additional medical evidence was not submitted to the ALJ until May 22, 2007, that additional evidence clearly shows that Plaintiff continued to seek medical treatment from Dr. Parker. (Tr. 495). Moreover, that additional evidence presents medical substantiation to Plaintiff's subjective complaints of pain. (Tr. 495-98).

- It is further noted that the claimant's testimony is inconsistent with the activities of daily living that she reported in a Physical Activities Questionnaire on August 24, 2005. At that time, she reportedly did housework every day such as cooking, cleaning, laundry, etc. Of significance, it is her report that her children (ages 8 and 20 months) depend on her for everything.[7] (Tr. 43).

This is an inaccurate representation of what Plaintiff actually recorded in the Questionnaire. The answers to the Questionnaire actually read as follows:

---

[7] Even were this statement made by the ALJ accurate, "it is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances." *Haugen*, 497 F.Supp.2d at 1327.

> Statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity . . . It is well established that sporadic or transitory activity does not disprove disability.

*Id., citing Smith v. Califano*, 637 F.2d 968, 971-72 (3rd Cir. 1981).

> "The things I do every day consist of housework. Such as cooking, cleaning, laundry . . . I can't deal with my grocery and shopping without getting sick. I can't stand up long enough to cook or wash dishes sometimes I have to sit down or lay down before I can finish." (Tr. 96).

> "I have trouble with daily activities. I can't stand up long enough to cook for my children or to take care of their needs. My 8 year old son does a lot for me such as vacuuming and sweeping up the floor. Things I can't do any more." (Tr. 96).

> "I have 2 children at home with me. 1 is 8 years old and the other is 20 months old. The 20 month old depends on me for everything he might need. My 8 year old helps a lot but he is in school now so my father comes and gets my 20 month old child to keep him some days for me, because some days I am not able to care for myself. He needs me for everything food, clothing, diapering, changing, bathing, etc." (Tr. 97).

- She [Plaintiff] testified that she has high blood pressure which she attributed to her pain; but Dr. Samlowski's office notes show that she felt that her blood pressure becomes elevated when she feels stressed. (Tr. 43).

The actual medical notes state the following: "Considered mild-moderate headache which is unchanged due to daily stressors, taking care of father at home. Blood pressure was high only when feeling stressed no elevation at this exam today." (Tr. 479). There is no indication that "daily stressors" refers only to caring for others – a daily stressor could well be pain.

Because there are numerous inconsistencies between the actual medical record and the ALJ's recitation of that record, on remand the ALJ should re-consider, as necessary, the Plaintiff's credibility and subjective complaints of pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam); *see also Davis v. Astrue*, 287 Fed. Appx. 748 at **12 (11th Cir. July 9, 2008), *citing Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) ("Where the ALJ improperly discredited claimant's subjective complaints . . . the regulations require remand to the ALJ for reconsideration of the claimant's functional capacity.").

**VI.    Conclusion**

For the reasons outlined above, the court concludes that the record does not contain substantial evidence to support the ALJ's finding that the Plaintiff does not meet the pain standard. Thus, the ALJ's determination that Plaintiff is not disabled is due to be remanded for further proceedings consistent with this memorandum opinion. A separate order will be entered.

**DONE** this the ___16th___ day of April, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE